**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA DALY**, | ) | |
| On behalf of herself and all | ) | |
| similarly situated persons | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:11cv911 |
| | ) | **Electronic Filing** |
| **NORTHWEST SAVINGS BANK**, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

March 20, 2013

## I.   INTRODUCTION

Plaintiff, Donna Daly ("Daly" or "Plaintiff"), filed a two (2) count Amended Complaint alleging violations of Section 1681g(g) of the Fair Credit Reporting Act, the ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by Defendant, Northwest Savings Bank ("Northwest" or "Defendant"), for failure to provide credit score disclosures as required under 15 U.S.C. § 1681g(g)(1)(A)(i) and failure to provide notice to home loan applicant as required under 15 U.S.C. § 1681g(g)(1)(A)(ii).  Northwest has filed a motion for summary judgment, Daly has responded and the matter is now before the Court.

## II.   STATEMENT OF THE CASE

On or about March 29, 2010, Daly entered into an agreement to sell her home located in Mt. Lebanon, Pennsylvania.  Northwest Concise Statement of Material Facts ("Northwest CSMF") ¶ 54; Daly Counter Statement of Material Facts ("Daly CSMF") ¶ 1.  The sale of Daly's home closed on June 30, 2010, and, after entering into a six-month lease, Daly moved into an apartment on July 1, 2010.  Northwest CSMF ¶¶ 58 & 79.

On or about July 24, 2010, Daly visited a Northwest branch on Cochran Road in Mt. Lebanon. Daly CSMF ¶ 2; Daly Dep. pp. 129-130. Daly testified that she also visited branches of PNC Bank and Citizens Bank in order to "look for a mortgage" and "shop between . . . the different banks." Daly Dep. pp. 134, 162. At Northwest, Daly met with Linda Walker ("Walker") and, though she had no specific real estate in mind for purchase, Daly told Walker she was there to apply for a "mortgage loan." Northwest CSMF ¶ 85; Daly Dep. p. 131. Daly gave Walker her driver's license, two (2) pay stubs and a 2009 income tax return. Daly CSMF ¶ 3; Northwest CSMF ¶ 87; Daly Dep. pp. 131-132. Daly gave Northwest permission to obtain her credit report. Northwest CSMF ¶ 92.

On or about July 27, 2010, Walker input the income information provided by Daly into the EasyLender software tool. Northwest CSMF ¶ 95; Daly CSMF ¶ 4. The EasyLender software indicates that the form utilized was called a "Uniform Residential Loan Application. Daly CSMF ¶ 5. Northwest uses credit scores for determining the qualifications of consumers for residential mortgages. Daly CSMF ¶ 11. Northwest obtained a credit report, a credit score and a Credit Score Disclosure from CBCInnovis. Daly CSMF ¶ 13. Northwest used a credit score referring or relating to Daly's credit history. Daly CSMF ¶ 14. Based upon Northwest's review of the submissions from the credit reporting company, Northwest denied Daly's prequalification application[1]. Northwest CSMF ¶ 96.

Walker sent Daly a letter dated July 27, 2010, which in relevant part stated:

> Thank you for participating in our Pre-approval Program. Your pre-approval application was processed using a credit report ordered from Experian . . . The information we received from the credit bureau indicated some negative ratings that must be

---

[1]    Though the record indicates Daly informed Walker that she was there to apply for a mortgage loan, Northwest has characterized her request as an application for prequalification.

2

explained and/or corrected before we will be able to issue a formal pre-approval certificate.  We strongly suggest you contact The Credit Bureau to review your credit history since we are not permitted to disclose or change your credit report.  This must be accomplished through the credit reporting agency listed above.

Daly Dep. pp. 138-138; Northwest App. Ex. E-34. Also included with the letter was a "Notice of Action Taken[2]" and an "Equal Credit Opportunity Act" notice. *Id.*  Northwest did not provide Daly the Credit Score Disclosure it had obtained from CBCInnovis with regard to Daly's request for a mortgage loan. Daly CSMF ¶ 16.


**III.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.,* one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.*  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West*

---

[2]    The "Notice of Action Taken" provided by Northwest to Daly conforms with the requirements of § 1681m(a) of the FCRA.

3

*Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

## IV.  DISCUSSION

Northwest argues that it is entitled to summary judgment because Section 1681g(g) of the Fair Credit Reporting Act did not apply to the prequalification application that Northwest prepared on behalf of Daly.  In the alternative, Northwest contends that its interpretation of § 1681g(g) was objectively reasonable, therefore Daly is unable to recover statutory damages based upon a willful violation of the FCRA and summary judgment must be entered in its favor.

A.    <u>Application of Section 1681g(g) of the Fair Credit Reporting Act</u>

The Fair Credit Reporting Act was passed to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  The enactment of FCRA "was prompted by congressional concern over abuses in the credit reporting industry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996).  Congress wanted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).  The statute imposes civil liability on "[a]ny person who ... fails to comply with any requirement imposed" by the statute. *See* 15 U.S.C. §§ 1681n, 1681o. A person who negligently fails to comply is liable to the affected consumer for actual damages. 15 U.S.C. § 1681o(a)(1). A person who willfully fails to comply is liable to the affected consumer for actual damages, or statutory damages ranging from $100 to $1,000, as well as punitive damages and attorney's fees. 15 U.S.C. § 1681n(a).

The FCRA requires a mortgage lender that obtains a "consumer" applicant's credit score and uses such credit score in the process of evaluating a loan application to provide that score to the applicant "as soon as reasonably practicable[.]" 15 U.S.C. § 1681g(g)(1)[3].  In relevant part, § 1681g(g) states:

> (1) . . . Any person who makes or arranges loans and who uses a consumer credit score, . . . , in connection with an application initiated or sought by a consumer for a closed end loan or the establishment of an open end loan for a consumer purpose that is

---

[3]    Section 1681g(g) was one of several amendments to the FCRA enacted in 2003 as part of the Fair and Accurate Credit Transactions Act ("FACTA").

5

secured by 1 to 4 units of residential real property (hereafter in this subsection referred to as the "lender") shall provide the following to the consumer as soon as reasonably practicable:

> (A) Information required under subsection (f).
>> (i) In general. A copy of the information identified in subsection (f) that was obtained from a consumer reporting agency or was developed and used by the user of the information.
>> (ii) Notice under subparagraph (d). In addition to the information provided to it by a third party that provided the credit score or scores, a lender is only required to provide the notice contained in subparagraph (D).

15 U.S.C. § 1681g(g)(1).  Northwest contends that § 1681g(g) applies only when a consumer submits a completed residential mortgage loan application secured by a particular property. Because Daly did not initiate or submit an application for a mortgage and failed to identify any residential real property to secure the loan, no notice or credit score disclosure was required under the FCRA.  In support of its position, Northwest argues that § 1681g(g) is clearly inapplicable to prequalification requests based upon (1) the plain language of the statute; (2) the legislative history of the statute; and (3) the express definition of a mortgage loan application under federal mortgage laws and regulations.

The Court's analysis begins with the language of the statute itself.  *Duncan v. Walker*, 533 U.S. 167, 172 (2001).  "[I]n interpreting a statute, a court should always turn first to one, cardinal canon before all others. [The Supreme Court has] stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."  *Rubin v. United States*, 449 U.S. 424, 430 (1981).  The Supreme Court further observed in *Perrin v. United States*, 444 U.S. 37 (1979) that "[a] fundamental canon of statutory construction is that … words will be interpreted as taking their ordinary, contemporary common meaning."  *Id.* at 42.  Moreover, the FCRA is a remedial statute that must be read

6

liberally to effectuate the underlying consumer protections intended by Congress. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. Pa. 2010)(citing *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir. 2008)).

If, however, "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters" or if the language of the statute is unclear, courts may resort to legislative history and "the intention of the drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also United States v. E.I. DuPont de Nemours & Co. Inc.*, 432 F.3d 161, 169 (3d Cir. 2005) ("Where a statute's text is ambiguous, relevant legislative history, along with consideration of the statutory objectives, can be useful in illuminating its meaning.").

The operative language of § 1681g(g) expressly states that disclosures must be provided when a lender, such as Northwest, "**uses** a consumer credit score, . . . , **in connection with an application initiated or sought** by a consumer for a closed end loan or the establishment of an open end loan for a consumer purpose that is secured by 1 to 4 units of residential real property. . ." 15 U.S.C. § 1681g(g)(1).  There is no dispute that Northwest used[4] a "consumer credit score" in its determination not to issue Daly a formal pre-approval certificate.  The question for the Court is whether such use was "in connection with an application initiated[5] or sought[6] by a consumer for a . . . loan . . . secured by . . . residential real property."

---

[4]   "Used" in this context is defined as "employed, made use of, utilized, availed oneself of." *See* THE OXFORD DICTIONARY AND THESAURUS, 1697 (American ed. 1996).

[5]   "Initiated" is the past tense of "initiate" which means "begin, start, originate." *Id*. at 768.

[6]   "Sought" is the past and past participle of "seek" which means "to make a search or inquiry for" and/or "quest for or after, pursue." *Id*. at 1367.

7

In its analysis, Northwest relies upon the truncated phrase "application … for a . . . loan . . . secured by 1 to 4 units of residential real property" in arguing that § 1681g(g) unambiguously applies only when a consumer has actually "initiated or sought" an application for a loan, and not when a consumer merely seeks a prequalification certificate.  Northwest ignores, however, the phrase "in connection with an application  . . ."  Courts have described the term "in connection with" as equivalent to the phrases "relating to" and "associated with." *Coregis Ins. Co. v. American Health Found.*, 241 F.3d 123, 128-129 (2d Cir. 2001)(citing *Jackson v. Lajaunie*, 270 So. 2d 859, 864 (La. 1972)). Moreover, the Third Circuit has found that the phrase "in connection with" should be "construed expansively." *United States v. Loney*, 219 F.3d 281, 284 (3d Cir. N.J. 2000)(quoting *United States v. Wyatt*, 102 F.3d 241, 247 (7th Cir. 1996)); *see also United States v. Thompson*, 32 F.3d 1, 7 (1st Cir. 1994)("The phrase 'in connection with' should be interpreted broadly. . . .").  Clearly, the use of the phrase "in connection with" expands the application of § 1681g(g)(1) beyond the consumer that submits a completed residential mortgage loan application secured by a particular property, and includes a pre-approval or prequalification application by a consumer making an inquiry for, or beginning the process to acquire, a residential mortgage.  Northwest's construction makes the phrase "in connection with" superfluous. The plain language of § 1681g(g), in this instance, applies to Daly's prequalification request because it was made in connection with an application for a mortgage.

The Court also finds that its construction of the plain language of the statute is supported by the legislative history and policy related to § 1681g(g).   In or around September of 2001, Senator Charles Shumer introduced Senate Bill 3063, the "Consumer Credit Score Disclosure Act" in the United States Senate. Daly App. Ex.10.  The Bill was "modeled largely after legislation that recently passed . . . in the California State Assembly's Banking Committee,"

8

and was intended to "lift the veil of secrecy and create greater opportunity for consumers to

secure a home mortgage at considerably lower costs." *Id.*  In his testimony before the House

Banking Subcommittee on Financial Institution and Consumer Credit, Senator Shumer stated:

> [b]y providing consumers with access to their credit score and the
> factors that negatively affect their score, we can help consumers
> improve .  .  . their credit behavior.  This bill helps consumers
> improve their credit, protects them from usurious rates and
> ultimately improves access to home ownership. Additionally, and
> most importantly, the disclosure of [a consumer's] credit score will
> provide [such consumer] with the tools to shop for the best
> mortgage terms.

*Id.*  Approximately three years later, a Committee of Conference worked out differences between

the applicable Senate Bill and House Bill 2622 resulting in the enactment of House Bill 2622.

Daly App. Ex. 15 and Ex. 16 pp. 25-26.

Northwest's construction of § 1681g(g) thwarts, rather than furthers, the policies and

intentions behind the FACTA amendments.  Under Northwest's construction, a consumer's

credit score would not be disclosed until such consumer entered into an agreement to purchase a

particular residential property and had submitted a mortgage application to a lender.  At that

point, it is too late for the consumer to improve any negative factors in their credit report and the

consumer's ability to "shop for the best mortgage terms" is also impeded.

It is also telling that Northwest included a "Notice of Action Taken" with its letter dated

July 27, 2010, informing Daly that it was unable to issue a pre-approval certificate.  The notice

conformed with the requirements of § 1681m(a) of the FCRA which requires "any person [who]

takes any adverse action with respect to any consumer that is based .  .  . on any information

contained in a consumer report" to provide certain information set forth under subsections (a)(1),

(a)(2), and (a)(3)[7].  *See* 15 U.S.C. § 1681m(a).  Under of § 1681a(k) of the FCRA, an "adverse action"  includes "an action taken or determination that is made **in connection with an application** that was made by, or a transaction that was initiated by, any consumer, . . . and [is] adverse to the interests of the consumer." *See* 15 U.S.C. § 1681a(k)(1)(B)(iv)(I) & (II)(emphasis added).  Obviously, Northwest determined that Daly's inquiry was made "in connection with an application" sufficient to trigger the notice requirements of § 1681m(a) of the FCRA.

In *Crane v. Am. Home Mortg. Corp.*, 2004 U.S. Dist. LEXIS 12770 (E.D. Pa. July 7, 2004), the United States District Court for the Eastern District of Pennsylvania also determined that Congress intended prequalification processes to fall within the FCRA's protection.  In *Crane*, a consumer alleged that the denial of a prequalification application for a loan at the lender's then most favorable rate was an adverse action triggering the notice requirements of the FCRA.  *Crane v. Am. Home Mortg. Corp.*, 2004 U.S. Dist. LEXIS 12770, at *3 -*4.  The consumer argued that the denial of prequalification at the lender's prime rate was an adverse action which required the lender to provide the consumer with a notice of adverse action and certain other information under 15 U.S.C. § 1681m(a).  *Id.* at *8.  The lender moved for summary judgment claiming (1) that it had not taken an adverse action against the consumer because the consumer initiated the prequalification process without following up on his initial inquiry, and (2) that a formal credit application was required to trigger consumer protections under the FCRA.  *Id.* at *12.

––––––––––––––––––––––––

[7]   On December 18, 2010, amendments to § 1681m(a) were enacted that redesignated former subsections (a)(2) and (a)(3) as (a)(3) and (a)(4) and inserted new subsection (a)(2) which required that the consumer be provided with "a numerical credit score as defined by section 1681g(f)(2)(A) of this title used by such person in taking any adverse action based . . . on any information in a consumer report".  *See* 15 U.S.C. § 1681m(a).

The court held that the language of the FCRA provision was clear and that notice requirements thereunder were intended to cover adverse actions "made in connection with an application" or "a transaction that was initiated by ... any consumer." *Id.* at *17.  Finding that the policy of the FCRA supported its construction of the statute, the Court stated:

> [T]he FCRA was enacted to protect consumers from the transmission of inaccurate information about them by requiring users of consumer credit information to alert consumers their credit history was used and by providing consumers with their credit information to determine its accuracy. . . Given the statute's purpose, the Court finds it unlikely that Congress intended pre-qualification processes -- through which a creditor obtains consumer credit reports and uses them to decide whether it should pursue a consumer's initial inquiry to the formal credit application stage -- to fall outside the scope of the [FCRA's] protection.

*Id.* at *20 (Citations omitted).

Accordingly, this Court finds that Northwest's acquisition and use of a consumer credit report in evaluating Daly's prequalification application falls within the application and protection of § 1681g(g) of the FCRA, and required Daly's credit score be provided to her as required thereunder.

B.     Willful Violation of Section 1681g(g) of the Fair Credit Reporting Act

Daly does not seek  actual damages resulting from a negligent violation of the FCRA, *see* 15 U.S.C. § 1681o(a)(1), but instead seeks statutory damages under § 1681n(a) contending that Northwest willfully failed to comply with the FCRA.  A person who willfully fails to comply is liable to the affected consumer for actual damages, or statutory damages ranging from $100 to $1,000, as well as punitive damages and attorney's fees. 15 U.S.C. § 1681n(a).

Northwest contends that its interpretation of § 1681g(g) was objectively reasonable, therefore, Daly is unable to recover statutory damages based upon a willful violation of the FCRA and summary judgment must be entered in its favor.

11

In order to show that Northwest willfully violated the FCRA, Daly must prove that Northwest acted knowingly, intentionally, or recklessly in disregarding the requirements of § 1681g(g). *See Safeco Ins. Co. of America v. Burr*, 551 U.S. at 60; *Cortez v. Trans Union, LLC*, 617 F.3d at 721.  In defining reckless, the Supreme Court stated that "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco Ins. Co. of America v. Burr*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Regarding the FCRA, the Court stated:

> [A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

*Safeco Ins. Co. of America v. Burr*, 551 U.S. at 69.

Northwest argues that it is entitled to judgment as a matter of law because its reading of the statute was objectively reasonable and its policies were undertaken pursuant to such reasonable reading of the FCRA's requirements. Viewing the record in a light most favorable to Daly, this Court is unable to find as a matter of law that Northwest's reading of the FCRA was objectively reasonable.

In arriving at its construction of § 1681g(g), Northwest placed emphasis on the phrase "application … for a . . . **loan** . . . **secured by** 1 to 4 units of **residential real property**" in arguing that Daly was protected only if she applied for a loan secured by a particular property. In so doing, Northwest ignored the more significant parts of the statute requiring disclosure when a lender "**uses a consumer credit score**, . . . , **in connection with an application** . . ." It is clear from the legislative history of, as well as the policy behind, the FCRA that it was enacted to

protect consumers from the transmission of inaccurate credit information by requiring users of consumer credit information to not only alert consumers that such credit history was used in a consumer transaction, but also by providing consumers with the credit information used in order for the consumer to determine the accuracy of such information. Therefore, anytime Northwest acquired and used a consumer credit report in any type of credit transaction, it should have been on notice that such use would trigger the protections of the FCRA. Moreover, Northwest placed more emphasis on the language of the "notice" required under § 1681g(g)(1)(A)(ii) in its construction of the statute, than on the actual statutory language that determined if such notice was required. *See* Northwest Brief p. 16.

Also troubling to the Court, however, was Northwest's inclusion of a "Notice of Action Taken," required under § 1681m(a) of the FCRA, with its letter informing Daly that her pre-approval application was denied. It is illogical that Northwest would determine that Daly's inquiry was made "in connection with an application" sufficient to trigger an adverse action notice under § 1681m(a) of the FCRA, but was not made "in connection with an application" sufficient to trigger the protections of § 1681g(g).

Accordingly, the Court finds that there is a genuine issue of material fact as to whether Northwest willfully violated § 1681g(g) of the FCRA. *See* F*errarelli v. Federated Fin. Corp. of Am.*, 2009 U.S. Dist. LEXIS 7286 8 *17 (S.D. Ohio Feb. 2, 2009); *also see Holmes v. Telecheck Intern., Inc.*, 556 F.Supp.2d 819, 847 (M.D.Tenn. 2008) ("Willfulness under the FCRA is generally a question of fact for the jury.").

**V.     CONCLUSION**

Based on the foregoing, Northwest's motion for summary judgment will be denied.  An appropriate Order follows.

Cercone, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DONNA DALY**, | ) |
| On behalf of herself and all | ) |
| similarly situated persons | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      2:11cv911 |
| | )      **Electronic Filing** |
| **NORTHWEST SAVINGS BANK**, | ) |
| | ) |
| Defendant. | ) |

### ORDER OF COURT

AND NOW, this 20th day of March, 2013, upon consideration of the Motion for

Summary Judgment (**Document No. 31**) filed on behalf of Defendant, Northwest Savings Bank,

Plaintiff's response thereto, the briefs and appendices filed in support thereof, pursuant to this

Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the Motion for Summary Judgment is **DENIED**.


                         s/ David Stewart Cercone
                         David Stewart Cercone
                         United States District Judge

cc:     James M. Pietz, Esquire
         James L. Rockney, Esquire
         Justin J. Kontul, Esquire
         Roy W. Arnold, Esquire
         A. Hugo Blankingship, Esquire
         Thomas B. Christiano, Esquire

         (*Via CM/ECF Electronic Mail*)